WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dagoberto Salazar,<br><br>            Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>            Defendant. | No. CV-19-00075-TUC-MSA<br><br>**ORDER** |

On April 20, 2020, Plaintiff Dagoberto Salazar filed a motion to alter or amend the judgment. (Doc. 25.) The motion has been fully briefed.[1] (Docs. 26, 27, 28.) For the following reasons, the motion will be granted in part. An amended order resolving Salazar's request for review of the administrative law judge's ("ALJ") decision will be filed concurrently with this order.

**I.      Preclusion from "all work"**

Salazar contends first that the Court erred in stating that, "[w]hile it appears that Salazar cannot perform any of the three jobs identified by the VE, it is not clear that Salazar is precluded from *all* work in the national economy." He argues that the Court "applied" an "incorrect, stricter definition of disability at Step 5 than the definition set forth the [sic] Social Security Act and the regulations," because the burden is on the Commissioner to

---

[1]    The motion to alter or amend the judgment was filed pursuant to Federal Rule of Civil Procedure 59(e), which has no counterpart in the Local Rules of Civil Procedure. As such, the parties were free to file a response and reply without prior authorization by the Court.  *Cf.* LRCiv 7.2(g)(2) (prohibiting a response and reply to a motion for reconsideration unless authorized by the Court).

prove that he can perform other work that exists in significant numbers in the national economy. However, while the Court's phrasing was admittedly imprecise, Salazar's argument does not undermine the order's reasoning and conclusion.

Contrary to Salazar's argument, the Court did not "apply" an overly strict definition of "disability." The erroneous statement did not go to the heart of the point being made by the Court. That point is simple, and remains plainly correct: the Commissioner previously failed to demonstrate that Salazar could adjust to other work, true, but that *does not* mean that the Commissioner will be unable to do so upon a rehearing. The determination whether Salazar can adjust to other work is one which this Court is ill-equipped to make on this record, which lacks relevant testimony from a vocational expert. The determination should be made by the ALJ after reconsidering Salazar's "residual functional capacity, age, work experience and education." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (internal citation omitted).

Despite the erroneous statements, there was no substantive legal error. The statements will be corrected in the amended order.

## II.   Citation to *Pinto v. Massanari*

Salazar next contends that the Court committed clear legal error by citing to *Pinto v. Massanari*, 249 F.3d 840 (9th Cir. 2001), for the proposition that "a claimant [is] not 'per se disabled' simply because she is illiterate and unable to communicate in English." Salazar argues that *Pinto* pertains only to the novel issue whether a claimant's education is relevant at step four. Thus, he says, it has nothing to do with his case, which involved error at step five.

This argument is unavailing. As an initial matter, Salazar ignores that the quoted statement was provided in a parenthetical to a "see" citation. Salazar also ignores that the citation to *Pinto* was preceded by an explanation of the Court's reasoning and by a citation to a Social Security regulation supporting that reasoning. Tellingly, Salazar does not challenge the Court's reasoning or dispute that the regulation supports it. Thus, Salazar's attack on the *Pinto* citation is of no consequence.

Additionally, while Salazar complains that *Pinto* involved errors at step four, he fails to explain why this distinction makes a difference. The statement in question was made during a criticism of the ALJ's reliance on a "Dictionary of Occupational Titles description [which] required language ability above that possessed by Pinto." 249 F.3d at 846–47. The step-five determination similarly involves consultation of a vocational expert and the Dictionary of Occupational Titles; indeed, Salazar's case involves a similar error. Moreover, as the Court had previously explained, education is one of several factors in the step-five determination, among the claimant's residual functional capacity, age, and work history. To say that the step-five determination depends on all these factors is to imply that no one factor is determinative. Thus, "[a] claimant is not per se disabled if he or she is illiterate." *Id.* at 847.

Salazar also contends that, regardless of "any abstract proposition that a claimant is not per se disabled due to his or her illiteracy and/or inability to communicate in English," he has established that he is disabled because he "showed at Step 5 that his education prevented the performance of the occupations underlying the ALJ's Step-5 decision." This argument, which Salazar has raised repeatedly, is without merit. The three jobs identified by the vocational expert were based on a hypothetical individual who is at least partially literate in English. Because Salazar is apparently illiterate, that hypothetical was wrong, and the jobs identified as representative of what that hypothetical person can perform were irrelevant. To find Salazar disabled because he cannot perform these irrelevant jobs would contravene the purpose of step five and grant Salazar an unwarranted windfall.[2]

The errors in Salazar's case and the resulting delay are certainly unfortunate, but the Social Security Act requires that a person actually be disabled before benefits may be awarded. *See Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir.

---

[2] There is an inconsistency in Salazar's argument. If he is indeed illiterate and incapable of communicating in English, then everything stemming from the ALJ's contrary finding—including the hypothetical and the vocational expert's testimony—is inherently flawed. But Salazar wants the ALJ's error only half corrected: He wants a finding that he is illiterate and unable to communicate in English, but he also wants to keep the defective vocational testimony relating to a literate person. Unsurprisingly, this would result in a clear finding of disability.

2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." (citation omitted)).  On remand, perhaps it will be determined that Salazar cannot adjust to other work that exists in sufficient numbers in the national economy.  But that conclusion is not required here, where the record is silent on which jobs, if any, a person with Salazar's characteristics (especially his education and language abilities) may be able to perform.  There was no clear legal error.

### III.     Education and residual functional capacity

Salazar contends that the Court erred by conflating his residual functional capacity with his education.  He is correct that this error is apparent in footnote four of the Court's order.  However, the Court disagrees that the error warrants a different result in this action.

In making the statements in question, the Court was merely attempting to explain the point made in the preceding sections.  That is, the vocational expert identifies "representative" jobs based on the hypothetical posed by the ALJ.  At least in some cases, the representative jobs for a person who is literate will differ from those for a person who is illiterate.  This appears to be one of those cases: although Salazar is apparently illiterate, the hypothetical person is at least partially literate; this resulted in the vocational expert identifying jobs which are *not* representative of what a person with Salazar's characteristics can perform.

This error can be corrected on remand by having the ALJ pose a revised hypothetical.  But it cannot serve as the basis for an immediate award of benefits now, since the record is silent on which jobs, if any, the vocational expert would identify in response to the revised hypothetical.  The record is also silent as to whether Salazar, given his residual functional capacity, age, education, and work history, would be able to perform those jobs.  Further proceedings will be useful to resolve these issues.  *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

The Court's error was stating that Salazar's residual functional capacity would be different based on a finding that he is illiterate and unable to communicate in English.

What it intended to convey is that the ALJ's *hypothetical* would be different, and that this could alter the jobs identified by the vocational expert as representative. This error does not warrant an immediate award of benefits and will be corrected in the amended order.

Salazar also contends that the Court "incorrectly held or implied that it was unknown whether Mr. Salazar could perform the Step-5 jobs the vocational expert identified given his illiteracy." He asserts that the Court found that his illiteracy precludes him from performing the jobs identified by the vocational expert and then disclaimed that finding by implying that he may have some ability to communicate in English. This argument lacks merit because, given the Commissioner's concession that the case should be remanded on the education and language issues, the Court had no occasion to determine Salazar's literacy in relation to the step-five determination.[3] Additionally, for the reasons described above, remand for further proceedings is appropriate even if Salazar is correct. If Salazar is illiterate, then the hypothetical was wrong; as a result, the "representative" jobs identified by the vocational expert were not really representative; as a result, Salazar's inability to perform those jobs does not establish disability. *See Massachi v. Astrue*, 486 F.3d 1149, 1152–55 (9th Cir. 2007) (remanding for further proceedings because of an error at step five).

Despite the Court's erroneous statements, the reasoning underlying its conclusions is sound. The statements will be corrected in the amended order.

**IV.     Application of credit-as-true rule**

Finally, Salazar argues that the Court erred in questioning whether the credit-as-true rule could be applied to the ALJ's finding that Salazar is literate and able to communicate in English. The first prong of the credit-as-true rule requires that the "ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Leon*, 880 F.3d at 1045 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). The Court previously observed that it is not clear that an error regarding a claimant's education and language abilities is equivalent to the rejection of a claimant's

---

[3] Indeed, the Court stated: "While *it appears* that Salazar cannot perform any of the three jobs identified by the VE . . . ." (emphasis added).

symptom testimony or a physician's medical opinion. Salazar argues that it is equivalent, and that the Court accordingly erred.

Whatever the merits of this position, Salazar was not prejudiced, as the Court assumed that the first prong was satisfied and went on to find that the other two prongs were not. As explained above, the reasons advanced by Salazar for overturning the Court's latter findings are not persuasive. Thus, the Court's conclusion remains sound.

## V. Amendments

To correct the statements identified by Salazar and clarify the bases for the Court's conclusions, the Court will make the following amendments and refile the order resolving Salazar's case:

1. At page 11, delete footnote four.

2. At page 11, begin new paragraph after <*Pinto v. Massanari*, 249 F.3d 840, 846–47 & n.4 (9th Cir. 2001) (explaining that the claimant was not "per se disabled" simply because she was illiterate and unable to communicate in English).>

3. At page 11, change <While it appears that Salazar cannot perform any of the three jobs identified by the VE, it is not clear that Salazar is precluded from *all* work in the national economy.> to <While it appears that Salazar cannot perform any of the three jobs identified by the VE, it is not clear whether Salazar can adjust to other work that exists in significant numbers in the national economy.>

4. At page 11, delete <To make this determination, the ALJ will need to reformulate the RFC and obtain testimony from a VE about occupations that require no or minimal English-language abilities. Only after weighing the RFC against the VE's testimony can it be determined whether Salazar is indeed disabled. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1167 (9th Cir. 2008) (remanding for the ALJ to reformulate the RFC and repeat steps four and five).> and replace with <Salazar argues that because the three jobs identified by the VE were supposedly "representative" of the other work he can perform, there is no reason to believe that he can adjust to other work. This argument overlooks the fact that the VE identified those jobs based on a hypothetical

individual who is literate and can communicate in English.  If Salazar is indeed illiterate and unable to communicate in English (as one ALJ has previously found), the hypothetical must be revised to reflect those educational characteristics.  In response to the revised hypothetical, the VE will identify the jobs, if any, that are representative of what the new hypothetical person can perform.  [¶]  At this stage, the Court cannot say what the revised hypothetical will look like, nor can it say which jobs, if any, the VE will identify as representative.  Given these gaps in the record, it is not clear whether a person with Salazar's residual functional capacity, age, education, and work experience is able to adjust to other work.  Further proceedings will be useful in resolving these issues.  *See Leon*, 880 F.3d at 1047 ("When there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand is necessary.")>

      5.      Following <the new hypothetical person can perform.> in the above replacement text, insert a footnote <There is an inconsistency in Salazar's argument.  If he is indeed illiterate and incapable of communicating in English, then everything stemming from the ALJ's contrary finding—including the hypothetical and the vocational expert's testimony—is inherently defective.  But Salazar wants the error only half corrected: He wants a finding that he is illiterate and unable to communicate in English, but he also wants to keep the defective vocational testimony relating to a literate person.  Unsurprisingly, this would result in a clear finding of disability.>

      6.      At page 11, change <As explained above, whether Salazar is precluded from all work, and thus is disabled, is an issue that remains outstanding.  *See McLeod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2011) (stating that the determination whether a claimant is precluded from all work is one "for the Social Security Administration to make").> to <As explained above, whether Salazar can adjust to other work is an issue that remains outstanding.  *See McLeod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2011) (stating that the ultimate determination of disability is "for the Social Security Administration to make").>

      In addition to these amendments, the Court will also make various non-substantive

changes.

**IT IS ORDERED** that the motion to alter or amend the judgment (Doc. 25) is **granted in part** and **denied in part**, as set forth above.

Dated this 12th day of May, 2020.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge