**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dagoberto Salazar,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-19-00075-TUC-MSA<br><br>**AMENDED ORDER** |

Plaintiff Dagoberto Salazar filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security. (Doc. 1.) Before the Court are Salazar's opening brief, the Commissioner's response brief, and Salazar's reply brief. (Docs. 17, 20, 21.) The parties agree that the administrative law judge erred below and that this case should be remanded. They disagree, however, on whether this case should be remanded for further proceedings or for an immediate award of benefits. For the following reasons, the Court will remand for further proceedings.

## Background

### I.  Procedural Background

Salazar applied for disability insurance benefits on March 31, 2011, alleging a disability onset date of February 5, 2010. **AR 86.**[1] His application was denied initially on August 15, 2011, and again on reconsideration on January 4, 2012. *Id.* **at 85, 92.** On February 21, 2012, Salazar filed a written request for a hearing before an administrative

---

[1] "**AR**" refers to the certified administrative record.

law judge ("ALJ"). *Id.* **at 131.**

On September 20, 2012, Salazar appeared with counsel at a hearing before ALJ Laura Speck Havens. *Id.* **at 61–76.** Salazar testified with the assistance of a Spanish-language interpreter. *Id.* **at 63.** On November 28, 2012, ALJ Havens issued a decision denying Salazar's application. *Id.* **at 106–12.** Salazar then sought review by the Appeals Council. *Id.* **at 193.** The Appeals Council issued a decision on February 24, 2014, vacating the ALJ's decision and remanding with instructions for the ALJ to hold a supplemental hearing, reconsider certain evidence, and gather additional evidence. *Id.* **at 118–20.**

On September 11, 2014, Salazar appeared with counsel at a second hearing before ALJ Havens. *Id.* **at 36–60.** Salazar again testified with the assistance of a Spanish-language interpreter. *Id.* **at 38.** On November 20, 2014, ALJ Havens issued another unfavorable decision. *Id.* **at 15–29.** Salazar again sought review by the Appeals Council, which denied review on June 14, 2016. *Id.* **at 1–3, 359–66.** On July 28, 2016, Salazar filed a complaint in federal district court, seeking review of ALJ Havens' decision under 42 U.S.C. § 405(g). *Id.* **at 696–97.** Pursuant to a stipulation between Salazar and the Commissioner, on February 27, 2017, Senior District Judge Raner C. Collins reversed the decision and remanded for another hearing and ALJ decision. *Id.* **at 707–11.**

Salazar's third hearing took place on April 10, 2018, before ALJ Charles Davis. *Id.* **at 634–60.** Salazar appeared with counsel and testified with the assistance of a Spanish-language interpreter. *Id.* **at 636.** On November 15, 2018, ALJ Davis issued an unfavorable decision—the third such decision in Salazar's case. *Id.* **at 613–26.** On February 13, 2019, Salazar filed a complaint in this Court seeking review of ALJ Davis's decision. (Doc. 1.)

**II.     Factual Background**

    **A.     Personal and Medical History**

Salazar is a 49-year-old who has no more than an eleventh-grade education, which he completed in Mexico.[2] **AR 591.** He primarily speaks Spanish and has only a limited ability to communicate in English; his treatment notes show that he regularly used his wife

---

[2]    Salazar has also reported completing only the seventh or eighth grade. **AR 471.**

- 2 -

as a translator at medical appointments. *See, e.g., id.* **at 423, 429, 457.** Salazar's work history consists of heavy labor, including construction and landscaping work. *Id.* **at 312.**

Salazar was involved in a car accident in August 2002. *Id.* **at 530.** Since then, he has reported experiencing neck and back pain, numbness in his arms and legs, and headaches. *Id.* **at 299, 530, 534.** His medical records consistently note herniated discs and mild to moderate spinal stenosis. *See, e.g., id.* **at 447–48, 453, 538, 551.** Salazar has also reported experiencing problems with his right knee, including arthritis, which started in February 2005 after he fell while climbing a staircase. *Id.* **at 567–68.** In September 2013, Salazar had surgery on his right knee to address a torn meniscus. *Id.* **at 569–70.**

### B. Opinion Evidence

On August 23, 2012, Dr. John Waldeigh and Physician Assistant Watus Cooper, both treating sources, completed a Medical Work Tolerance Recommendations form. **AR 546–47.** They opined that Salazar was capable of only part-time work in the sedentary or light exertional ranges, which involve lifting a maximum of 20 pounds. *Id.* **at 546.** They opined further that Salazar can sit for 30 minutes at a time for a total of four hours per eight-hour workday, stand for two hours at a time for a total of four hours per workday, and walk for one hour at a time for a total of two hours per workday. *Id.* They also opined that Salazar was incapable of fine hand movements, bending, crouching, and squatting. *Id.* **at 547.**

On October 10, 2012, Dr. Jerome Rothbaum performed a consultative examination. *Id.* **at 554–64.** Dr. Rothbaum opined, among other things, that Salazar was capable of lifting and carrying between 21 and 50 pounds on an occasional basis, standing or walking for a total of six hours per eight-hour workday, performing fine hand movements on a frequent basis, and kneeling, crouching, and crawling on a frequent basis. *Id.* **at 557–60.**

In November 2012, Salazar's treating sources submitted written responses to Dr. Rothbaum's medical report. *Id.* **at 571–73.** Based on a July 2012 imaging report showing that Salazar has a herniated disc, Dr. Waldeigh disagreed that Salazar can lift and carry up to 50 pounds or perform fine hand movements. *Id.* **at 571.** Dr. Waldeigh also pointed out

that Salazar was taking narcotic pain medications, which have significant side effects. *Id.* PA Cooper asserted that Salazar could not return to his old work, would not be productive in other work, and would often miss work due to chronic pain. *Id.* **at 572–73.** Citing to a list of issues for which Salazar has sought treatment, PA Cooper opined that Salazar is completely disabled. *Id.* **at 572.**

Dr. Rothbaum performed a second consultative examination on April 9, 2014. *Id.* **at 590–600.** Dr. Rothbaum again opined that Salazar could lift and carry between 21 and 50 pounds on an occasional basis, perform fine hand movements on a frequent basis, and kneel, crouch, and crawl on a frequent basis. *Id.* **at 593–96.** However, Dr. Rothbaum limited Salazar to sitting, standing, or walking for no more than 30 minutes at a time, and further limited Salazar to standing or walking for no more than four hours per eight-hour workday.[3] *Id.* **at 594.**

On May 12, 2014, Dr. Waldeigh and PA Cooper submitted a written response to Dr. Rothbaum's second report. *Id.* **at 605.** They asserted that Dr. Rothbaum's lifting-and-carrying opinion is contraindicated by Salazar's imaging reports, that lifting on the scale proposed by Dr. Rothbaum could lead to "further disc herniations and irreversible nerve damage," and that Salazar's self-reports are consistent with the objective medical evidence. *Id.* As such, they concluded, Salazar "is not capable of full-time work at any level." *Id.*

### III.   Hearing Testimony

Salazar appeared before ALJ Davis on April 10, 2018. **AR 634.** Salazar explained that he cannot communicate in English either for work or "to have a real conversation," but that he is able to ask a store clerk where to find certain "basic things." *Id.* **at 638–39.**

As to his conditions, Salazar explained that he is incapable of working due to pain in his neck, lower back, and arms. *Id.* **at 641–42.** He testified that he loses strength and sensation in his fingers and, as a result, he can lift a maximum of only 10 pounds. *Id.* **at 647.** He also testified that he can stand or sit for a maximum of one hour before needing

---

[3] Salazar's wife, Zulma Salazar, submitted an affidavit asserting that Dr. Rothbaum's April 2014 report contains numerous inaccuracies and omits relevant information provided during the examination. **AR 353–54.**

to change positions. *Id.* Salazar also stated that his pain medication makes him sleepy and dizzy and does not fully control his pain. *Id.* **at 649.**

As for his daily activities, Salazar reported that he helps around the house with cooking and laundry, that he cleans up the yard for about an hour, and that he spends the rest of the day watching television or listening to the radio. *Id.* **at 645–46.** He reported that he last rode a horse seven years before the hearing; however, when questioned about a medical record from November 2016 describing an injury caused by horseback riding, Salazar testified that he did not remember. *Id.* **at 639–41.**

The ALJ asked the vocational expert ("VE") about hypothetical claimants with Salazar's age and education who could perform medium and light work with certain exertional and environmental limitations. *Id.* **at 651–54.** The VE testified that these hypothetical individuals would be incapable of performing Salazar's past construction work but could perform other light work in the national economy, including ticket taker, parking lot attendant, and mail clerk. *Id.* **at 652–54.** The VE confirmed that these positions require at least some ability to read English. *Id.* **at 654.**

**IV.   ALJ Decision**

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Salazar had not engaged in substantial gainful activity between his alleged onset date and date last insured. **AR 616.** At step two, the ALJ found that Salazar has two severe impairments: degenerative disc disease and a surgically repaired right knee. *Id.* At step three, the ALJ found that Salazar does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* **at 617.**

Between steps three and four, the ALJ determined that Salazar has the residual functional capacity ("RFC") to perform light work with the following limitations: he can lift and carry up to 50 pounds only occasionally; he can lift and carry up to 20 pounds frequently; he can sit for up to 30 minutes at a time for a total of six hours per eight-hour workday; and he can stand or walk for up to 30 minutes at a time for a total of four hours

Case 4:19-cv-00075-MSA   Document 30   Filed 05/12/20   Page 6 of 12

per workday. *Id.* The ALJ also found that Salazar can frequently balance, stoop, kneel, crouch, crawl, reach, handle, finger, feel, push, and pull. *Id.* In reaching this determination, the ALJ found that Salazar's subjective complaints are inconsistent with the objective medical evidence and with Salazar's daily activities. **Id. at 617–19.** The ALJ gave "great" weight to the most recent opinion of Dr. Rothbaum, because it was based on a physical examination and consistent with the objective medical evidence. **Id. at 621–22.** The ALJ gave "little" weight to the opinion of Dr. Waldeigh, asserting that such opinion was inconsistent with the objective medical evidence and with Salazar's level of activity. ***Id.* at 622–23.**

At step four, the ALJ found that Salazar cannot perform his past relevant work as a construction laborer. **Id. at 624.** At step five, however, the ALJ found that Salazar can perform other work in the national economy and that Salazar is therefore not disabled. **Id. at 625–26.** Significantly, this conclusion rests in part on the ALJ's determination that Salazar "has a limited education and is able to communicate in English." **Id. at 624.**

## Legal Standard

The ALJ's decision to deny disability insurance benefits is subject to harmless-error review and must be affirmed unless it is not supported by substantial evidence or is based on a legal error. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Furthermore, "[a] reviewing court may only consider the reasons provided by the ALJ in the disability determination and 'may not affirm the ALJ on a ground upon which he did not rely.'" *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)).

## Discussion

Salazar contends that the ALJ erred in finding that he "has a limited education and is able to communicate in English." Salazar also contends that the ALJ erred in rejecting Dr. Waldeigh's opinion that he is incapable of sustained work. Salazar argues that he is incapable of reading, writing, or communicating in English. He maintains that he is clearly disabled on the record and accordingly requests that this case be remanded for an

- 6 -

immediate award of benefits.  The Commissioner disputes that it was error for the ALJ to reject Dr. Waldeigh's opinion, but agrees that the ALJ erred with respect to Salazar's education and language abilities.  The Commissioner further agrees that a remand is appropriate.  However, the Commissioner requests that the remand be for further proceedings, not for an immediate award of benefits.

As there is no dispute that Salazar's first and second claims are meritorious, the Court will address only Salazar's third claim.  The Court will then determine whether an award of benefits is appropriate under the credit-as-true rule.

**I.     Rejection of Dr. Waldeigh's Opinion**

Salazar contends that the ALJ erred in giving little weight to the opinion of Dr. Waldeigh, a treating physician.  Dr. Waldeigh opined that Salazar is capable of only part-time work and that Salazar would miss eight workdays per month.  **AR 546.**  Dr. Waldeigh also endorsed significant exertional limitations for Salazar.  Among other things, Dr. Waldeigh opined that Salazar can lift a maximum of 20 pounds and frequently lift only 10 pounds.  *Id.*  Dr. Waldeigh also opined that Salazar should avoid bending, crouching, squatting, and fine hand movements.  *Id.* **at 547.**  In rejecting these limitations, the ALJ relied primarily on the clinical findings of the consultative physicians, particularly those of Dr. Rothbaum.  *Id.* **at 622–23.**

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).  Here, the ALJ's interpretation of the medical evidence is supported by substantial evidence.

The ALJ first noted an inconsistency between Dr. Waldeigh's medical opinion and the medical evidence.  **AR 622.**  Specifically, although Salazar's imaging reports revealed

mild to moderate spinal conditions, clinical findings indicated that Salazar maintained normal strength in his upper and lower extremities, as well as normal strength in his hands. *See id.* **at 464–65, 551, 591–92.** The ALJ could rationally conclude that this evidence is inconsistent with Dr. Waldeigh's opinion that Salazar is capable of lifting no more than 20 pounds. *Id.* **at 546.** Furthermore, clinical findings also indicated that Salazar maintained normal sensation in his hands and the ability to squat two-thirds of the normal distance, and Salazar was observed placing his feet onto a chair and bending at least 70 degrees to put on his socks and shoes. *Id.* **at 592.** The ALJ could rationally conclude that these clinical findings and observations are inconsistent with Dr. Waldeigh's opinion that Salazar is totally precluded from performing fine hand movements, from feeling or touching when sensation is required, and from bending, crouching, and squatting. **AR 547.** Inconsistencies like the ones identified here constitute a specific and legitimate reason for discounting a medical opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Additionally, the ALJ did not reject Dr. Waldeigh's opinion wholesale. The ALJ found, consistent with both Dr. Waldeigh's and Dr. Rothbaum's opinions, that Salazar's spinal condition limits Salazar to standing for a maximum of four hours per workday and to sitting for only 30 minutes at a time. *Compare* **AR 546,** *with id.* **at 617.** To the extent the ALJ rejected the more restrictive parts of Dr. Waldeigh's opinion, that decision was rational based on the inconsistencies discussed above. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ observed that Dr. Waldeigh had responded to Dr. Rothbaum's reports, asserting that Salazar is far more limited than Dr. Rothbaum believed. **AR 571, 605, 622–23.** The ALJ noted that one of Dr. Waldeigh's primary criticisms was that Dr. Rothbaum gave little consideration to Salazar's subjective complaints of burning, radiating pain, and numbness. *Id.* **at 571, 605, 622.** However, the ALJ had already discounted Salazar's testimony concerning the severity of his symptoms. *Id.* **at 617–19.** Salazar has not seriously challenged that finding here. This omission is significant because an ALJ may

disregard a physician's opinion if it rests largely on the claimant's subjective complaints, and those complaints have been "properly discounted." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

The ALJ also observed that Dr. Waldeigh cited a specific imaging report showing a disc protrusion and resulting sagittal canal narrowing and ventral contouring of the midline spinal cord. **AR 551, 571.** The physician who authored the reported remarked that "[t]he disc protrusion is considered significant and may be the cause of the patient's symptoms." *Id.* **at 551.** The ALJ disagreed with Dr. Waldeigh that this report supported Salazar's subjective complaints. *Id.* **at 622–23.** The ALJ pointed out that the imaging report described the protrusion as "moderate," the canal narrowing as "moderate," and the ventral contouring as "mild-to-moderate." *Id.* **at 551, 622–23.** The ALJ also noted that the imaging physician "[r]ecommend[ed] clinical correlation," and that the clinical evidence (described above) did not support Salazar's subjective complaints. *Id.* **at 551, 623.** This was a rational interpretation of the imaging report. *See Burch*, 400 F.3d at 679.

The ALJ also found that Dr. Waldeigh's opinion is inconsistent with Salazar's activity level. **AR 623.** Salazar reported driving, preparing simple meals, performing light household chores, caring for his five-year-old child for three days while the child was sick, pulling weeds in the yard for an hour, and watching television and listening to the radio. *Id.* **at 590, 645.** It is not clear how these activities specifically exceed the limitations endorsed by Dr. Waldeigh. However, the ALJ also noted that Salazar was feeding and riding horses in late 2016. *Id.* **at 619, 905–06.** At minimum, it was rational for the ALJ to conclude that horseback riding was inconsistent with Salazar's reports of significant back and neck pain, and thus with Dr. Waldeigh's opinion, which was based in part on those reports. *See id.* **at 623.** This was also a specific and legitimate reason. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding the ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

Both reasons provided by the ALJ constitute specific and legitimate reasons for

discounting the opinion of Dr. Waldeigh. Additionally, the adoption of Dr. Rothbaum's contrary opinion by itself constitutes a specific and legitimate reason, as Dr. Rothbaum's opinion rests on his own independent examination and clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that an examining physician's opinion was substantial evidence for rejecting a treating physician's opinion because it was based on an independent examination); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

## II. Remedy

The ALJ erred with respect to Salazar's education and language abilities. Salazar contends that these errors warrant a remand for an immediate award of benefits. For the following reasons, the Court disagrees.

Under the "credit-as-true" rule, federal courts may remand for an award of benefits if three conditions are met. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). First, courts determine "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, courts "determine whether the record has been developed thoroughly and is free of conflicts, ambiguities, or gaps." *Id.* at 1046–47. "When there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand is necessary." *Id.* at 1047. Third, courts determine whether, if the improperly rejected evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* at 1045. If yes, then a direct award of benefits may be appropriate. *Id.* However, even where the credit-as-true rule is satisfied, courts retain the discretion to remand for further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101–02 (9th Cir. 2014).

It is not clear whether the first prong is satisfied. The credit-as-true rule typically applies where the ALJ incorrectly rejects symptom testimony, *see Revels v. Berryhill*, 874 F.3d 648, 668–69 (9th Cir. 2017), or a medical opinion, *see Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017). The ALJ's findings that Salazar has a limited education and can communicate in English are not a "rejection" of evidence in this sense.

In any event, the other two credit-as-true prongs are not satisfied. The ALJ would not be required to find Salazar disabled if Salazar is illiterate and unable to communicate in English. A claimant's literacy and ability to communicate in English are merely factors (albeit significant ones) in the disability analysis. 20 C.F.R. § 404.1564(b)(1), (5); *see Pinto v. Massanari*, 249 F.3d 840, 846–47 & n.4 (9th Cir. 2001) (explaining that the claimant was not "per se disabled" simply because she was illiterate and unable to communicate in English).

Furthermore, an award of benefits is inappropriate because there is at least one material issue outstanding. While it appears that Salazar cannot perform any of the three jobs identified by the VE, it is not clear whether Salazar can adjust to other work that exists in significant numbers in the national economy. Salazar argues that because the three jobs identified by the VE were supposedly "representative" of the other work he can perform, there is no reason to believe that he can adjust to other work. This argument overlooks the fact that the VE identified those jobs based on a hypothetical individual who is literate and can communicate in English. If Salazar is indeed illiterate and unable to communicate in English (as one ALJ has previously found), the hypothetical must be revised to reflect those educational characteristics. In response to the revised hypothetical, the VE will identify the jobs, if any, that are representative of what the new hypothetical person can perform.[4]

At this stage, the Court cannot say what the revised hypothetical will look like, nor can it say which jobs, if any, the VE will identify as representative. Given these gaps in the record, it is not clear whether a person with Salazar's residual functional capacity, age, education, and work experience is able to adjust to other work. Further proceedings will be useful in resolving these issues. *See Leon*, 880 F.3d at 1047 ("When there are outstanding issues that must be resolved before a determination can be made, or if further

---

[4] There is an inconsistency in Salazar's argument. If he is indeed illiterate and incapable of communicating in English, then everything stemming from the ALJ's contrary finding—including the hypothetical and the vocational expert's testimony—is inherently defective. But Salazar wants the error only half corrected: He wants a finding that he is illiterate and unable to communicate in English, but he also wants to keep the defective vocational testimony relating to a literate person. Unsurprisingly, this would result in a clear finding of disability.

- 11 -

administrative proceedings would be useful, a remand is necessary.").

In urging the Court to award benefits, Salazar emphasizes that he has been seeking benefits for nearly a decade, and that this is his third defective ALJ decision. "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). Although regrettable, this delay by itself is not a basis on which to award benefits. As explained above, whether Salazar can adjust to other work is an issue that remains outstanding. *See McLeod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2011) (stating that the ultimate determination of disability is "for the Social Security Administration to make").

**IT IS ORDERED** that the Order dated March 20, 2020 (Doc. 23) is **withdrawn** and **replaced** by this Order.

**IT IS FURTHER ORDERED** that the decision of the Commissioner of Social Security is **reversed**, and this case is **remanded** back to the ALJ. On remand, the ALJ shall hold another hearing, reconsider Salazar's literacy and language abilities, take additional testimony from a vocational expert, and issue a new decision.[5]

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter an amended judgment based on this Order. This case is to remain closed.

Dated this 12th day of May, 2020.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge

---

[5] The ALJ may also wish to reconsider the opinion of Dr. Waldeigh.